UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

APRIL A. S.,

                                        Plaintiff,

v.                                                                               5:23-cv-0899
                                                                               (MAD/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
250 S. Clinton St., Ste. 210
Syracuse, NY 13202
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION     KRISTINA D. COHN, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Blvd.
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

### I. INTRODUCTION

      April A. S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB"). Dkt. No. 1. The matter was referred to the undersigned for a report and recommendation by the Hon. Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c), in accordance with General Order 18. Dkt. Nos. 12, 14. Plaintiff also filed a reply. Dkt. No. 15. For the reasons set forth below, the Court recommends Plaintiff's motion be denied, Defendant's motion be granted, the Commissioner's decision be affirmed.

**II.    BACKGROUND**

Plaintiff was born on March 19, 1985. T. 86.[1] She did not graduate high school and previously worked as a cashier and assistant store manager. *Id*. at 42-45.

Plaintiff filed for DIB on November 16, 2020, alleging disability beginning December 2, 2019, due to anxiety, depression, migraine headaches, bilateral carpal tunnel syndrome, arthritis, and obesity. *Id*. at 227-233, 257. The claim was initially denied on April 12, 2021, and upon reconsideration on June 7, 2021. *Id*. at 115-26, 127-40. On February 24, 2022, Plaintiff appeared with her representative and testified before Administrative Law Judge ("ALJ") Jennifer Gale Smith. *Id*. at 36-84. A vocational expert also testified at the hearing. *Id*.

After the hearing, the ALJ held the record open in order for Plaintiff's representative to submit outstanding medical records, which were received and marked as exhibits. *See id*. at 15. Thereafter, the ALJ obtained interrogatories from Steven Golub, M.D., and Grant Williams, Ph.D., impartial medical experts, both of whom reviewed the record in its entirety, and rendered assessments of Plaintiff's functioning. *See id*. at 15, 1388-99, 1400-10.

On May 11, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. *Id*. at 12-35. On June 23, 2023, the Appeals Council denied

---

[1] The Administrative Record/Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

Plaintiff's request for review, making the ALJ's decision final. *Id*. at 1-6. Plaintiff timely commenced this action on July 26, 2023. Dkt. No. 1.

## III.   LEGAL STANDARDS

### A.   Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (citation omitted); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his or her reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

## B.  Standard to Determine Disability

To be considered disabled, a plaintiff seeking disability benefits must establish she is unable "to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Act. *See* 20 C.F.R. § 404.1520(a).[2] The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The claimant bears the burden of proof regarding the first four steps. *Kohler*

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

5

*v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

## IV. THE ALJ'S DECISION

The ALJ first determined Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020. *Id*. at 17. At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity from December 2, 2019, her alleged onset date, through December 31, 2020, her date last insured ("DLI"). *Id*. At step two, the ALJ determined through the DLI, Plaintiff had the following severe impairments: carpal tunnel syndrome, cubital tunnel syndrome, headaches, depressive disorder, and anxiety disorder. *Id*. at 18. At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments through the DLI that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15.

Next, the ALJ determined through the DLI, Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant can frequently handle, finger, and feel. The claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; should avoid work outdoors in bright sunshine and work with brighter or flickering lights such as one would experience welding or cutting metals. The claimant should work at simple, routine, and repetitive tasks. The claimant should work in a low stress job defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. The claimant should work at goal-oriented work rather than production pace rate work. The claimant should have occasional contact with coworkers and supervisors and no public contact.

*Id*. at 21.

At step four, the ALJ found through the DLI, Plaintiff was unable to perform any past relevant work. *Id*. at 26. At the fifth and final step, relying on the VE's testimony, the ALJ found through the date DLI, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. *Id*. at 26-27. Accordingly, the ALJ concluded Plaintiff was not disabled as defined in the Social Security Act, from December 2, 2019, the alleged onset date, through December 31, 2020, the DLI. *Id*. at 27.

## V.   DISCUSSION

Plaintiff argues the RFC determination was not supported by substantial evidence because the ALJ failed to obtain a retrospective medical opinion that related to the relevant time period. *See generally*, Dkt. Nos. 12, 15. According to Plaintiff, "[t]his misunderstanding of the need for retrospective opinion evidence in a remote DLI case permeated the ALJ's evaluation of the opinion evidence in this case generally, causing harmful error." Dkt. No. 12 at 5. Defendant contends the ALJ's decision is supported by substantial evidence and is based upon the application of correct legal standards. Dkt. No. 14 at 3-16.

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)).

Here, Plaintiff contends the ALJ should have elicited a retrospective opinion, but this Court finds the ALJ's decision demonstrates an appropriate evaluation of the medical opinions and other record evidence to reach a disability determination for the relevant period that is supported by substantial evidence. Consistent with the Commissioner's regulations, the Second Circuit has affirmed the Commissioner's decisions in cases where the ALJ did not rely on a

7

medical source opinion, even in cases where the ALJ did so after rejecting opinions from the claimant's own providers. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (summary order) (affirming the Commissioner where the record contained no medical opinion assessing the specific restrictions reflected in the RFC determination, observing that treatment notes were in line with the ALJ's determination); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.").

"In the context of retrospective opinions, the Second Circuit reiterated that an ALJ is not required to obtain a retrospective medical opinion where the ALJ has 'a complete medical history' and where a plaintiff shows no evidence 'that retrospective assessments would have revealed any useful information or that the physicians were prepared to undertake such assessments.'" *Donald T. W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1238 (WBC), 2021 WL 5907907, at *3 (W.D.N.Y. Dec. 14, 2021) (quoting *Stone v. Comm'r of Soc. Sec. Admin.*, 767 F. App'x 207, 208 (2d Cir. 2019)).

Here, the record was complete and the ALJ exercised her discretion to obtain interrogatories from independent medical experts. *See* 20 C.F.R. § 404.1513a(b)(2) ("Administrative law judges may also ask for medical evidence from expert medical sources.").

Contrary to Plaintiff's assertion, nothing more was required. *See* Dkt. No. 14 at 8.[3] Put simply, the courts have never recognized a duty upon the Commissioner to secure evidence affirmatively establishing disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *Bowen v. Yuckert*, 482 U.S. 137, 149-50 (1987). "Therefore, Plaintiff's argument, the ALJ committed legal error in failing to obtain a retroactive opinion from a medical source, fails." *Donald T. W.*, 2021 WL 5907907, at *3.

Next, as noted above, Plaintiff argues the ALJ's "misunderstanding of the need for retrospective opinion evidence in a remote DLI case permeated the ALJ's evaluation of the opinion evidence in this case generally, causing harmful error." The Court disagrees.

For claims filed on or after March 27, 2017, such as this one, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* § 404.1520c(c). Of

---

[3] Plaintiff quotes *Brown v. Astrue*, 4 F. Supp. 3d 390, 399 (N.D.N.Y. 2012), for the general proposition that "[w]hen a medical opinion is requested after the date last insured, the requester should ask for a 'retrospective opinion concerning [a claimant's] functional limitations as of the date last insured." Dkt. No. 12 at 7. But the "need" for a retrospective opinion is heavily fact driven and often involves treating physicians' opinions. *See, e.g.*, *Brown*, 4 F. Supp. 3d at 399 ("While the treating physician's assessments were rendered after the date last insured, Dr. Dang should have been asked to provide a retrospective opinion concerning Plaintiff's functional limitations as of the date last insured, particularly since he treated Plaintiff during that period and because the impairments in question were evidently caused by the January 2006 motor vehicle accident.").

9

those, the "factors of supportability . . . and consistency . . . are the most important factors." *Id*. § 404.1520c(b)(2).

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. *Id*. Concerning the "supportability" factor, the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). With respect to the "consistency" factor, the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition to the opinions from independent medical experts Dr. Williams and Dr. Golub, the administrative record contains opinions from treating providers Anthony Malvasi, D.O., Erinn White, M.D., Lauren Eadline, FNP-C, and Kevin Lewis, LMFT. T. 22-24, 1110-15, 1116-20, 1314-20, 1326-31, 1388-99, 1400-10. In relevant part, the ALJ found Dr. Williams' opinion persuasive, Dr. Malvasi's opinion generally persuasive, LMFT Lewis' opinion not very persuasive, and Dr. Golub's opinion not particularly persuasive. *Id*. at 22-23.

In April 2022, Dr. Williams reviewed the entire record and opined Plaintiff has moderate limitations in her ability to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations. T.

1401-02.  The ALJ found Dr. Williams' opinion persuasive explaining Dr. Williams had the opportunity to review the record evidence and his opinion was consistent with Plaintiff's mental status findings during the relevant period that showed Plaintiff was cooperative and had an appropriate affect, full orientation, intact thoughts, and normal judgment.  *Id*. at 22, 378, 621, 644, 656, 754, 757, 777, 781, 820, 956, 966.  The ALJ also noted Dr. Williams' expertise and knowledge of the disability program.  *Id*. at 22.

Plaintiff argues the ALJ erred in finding Dr. Williams' opinion persuasive because the limitations provided in the form *only* applied to April 2022, sixteen months after Plaintiff's DLI, and thus were not relevant to the time period of her claim.[4]  The Court is not persuaded.

"Medical opinions given after the date that [a claimant's] insured status expired are taken into consideration if such opinions are relevant to [plaintiff's] condition prior to that date.  The expiration date should not act as a cutoff with regard to the reports considered on this specific issue."  *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003).

"The Second Circuit 'has observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the date up to which the earning requirement . . . was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date.'"  *Tari L. E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-1283 (DEP), 2023 WL 395189, at *4 (N.D.N.Y. Jan. 24, 2023) (quoting *inter alia Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991)); *see also Karen S. v. Comm'r*

---

[4] Question 4 of the Medical Statement (Mental) form reads as follows: "The limitations above are assumed to be your opinion regarding current limitations only.  However, if you have sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitations you found above first present?"  T. 1042.  Dr. Williams left this portion of the questionnaire blank.  *See id*.  As discussed further below, in his response to the same question, Dr. Golub indicated the limitations he identified were present in January 2021.  *Id*. at 1394.

*of Soc. Sec.*, No. 20-CV-0960 (CFH), 2022 WL 462086, at *9 (N.D.N.Y. Feb. 15, 2022) (noting "medical evidence obtained after a plaintiff's DLI can be used to show that a plaintiff was disabled prior to that date as long as it pertains to already-existing impairments") (internal quotation marks and alterations omitted). Thus, the fact that Dr. Williams' opinion was prepared after the DLI does not, without more, provide a basis for disregarding his opinion. *Brown v. Astrue*, 4 F. Supp. 3d 390, 399 (N.D.N.Y. 2012).

By its terms, the opinion from Dr. Williams represented Plaintiff's limitations as of April 2022, but unlike in cases involving treating or consultative examining physicians, *see* Dkt. No. 12 at 7-8, Dr. Williams' opinion was based on his review of the record including office treatment records from Dr. Malvasi and other providers at CNY Family Care from January 2018 through March 2021, and emergency department records from August 2020. T. 1401-02, 600-975. *See Lynch v. O'Malley*, No. 22-CIV-5620, 2024 WL 728483, at *12 (S.D.N.Y. Feb. 21, 2024) ("Although these opinions were rendered after Plaintiff's DLI, they both rely on medical records from the relevant period."). Moreover, it would be illogical for a reviewing physician's opinion to apply only to the date it was prepared, where the medical records reviewed all preceded the date of review. Thus, the Court declines to find Dr. Williams' interrogatory responses irrelevant.

Plaintiff next argues "[h]ad the ALJ not committed this legal error and properly found Dr. Williams' opinion irrelevant, the way in which she credited the opinion evidence would change. At minimum, she would not have derived her RFC based largely in part on the opinion of Dr. Williams." Dkt. No. 12 at 9; T. 22. Even assuming, *arguendo*, the ALJ erred in her evaluation of Dr. Williams' opinion, the error would be harmless. *See Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) ("Remand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion.") (citation and internal quotation marks omitted).

12

In addition to Dr. Williams' opinion, the ALJ's mental RFC determination is largely based on Dr. Malvasi's opinion. T. 22. Indeed, Dr. Malvasi opined Plaintiff had an unlimited or very good ability to remember work-like procedures; understand, remember, and carry out short and simple instructions; sustain an ordinary routine; ask simple questions or request assistance; and be aware of normal hazards. *Id*. at 1112. He opined Plaintiff had a limited but satisfactory ability to maintain attention for two-hour segments; maintain regular attendance and be punctual; work in coordination with or proximity to others; make simple work-related decisions; perform at a consistent pace without an unreasonable number of rest periods; respond appropriately to criticism from supervisors; get along with coworkers or peers; and respond appropriately to changes in a routine work setting. *Id*. Dr. Malvasi indicated Plaintiff was seriously limited, but not precluded in her ability to complete a normal workday and workweek without interruptions and deal with stress. *Id*.

The ALJ was generally persuaded by Dr. Malvasi's mental limitations because they were supported by Dr. Malvasi's own treatment notes indicating Plaintiff was cooperative, showed no signs of anxiety, depression, or agitations, and had clear speech, *id*. at 22, 1031, 085, 1227, and consistent with mental status findings from other sources showing Plaintiff was cooperative and had an appropriate affect, full orientation, intact thoughts, and normal judgment. *Id*. at 22, 356, 365, 369, 378, 387, 403, 412, 420, 433, 507, 592, 621, 644, 656, 754, 757, 777, 781, 820, 956, 966, 1018, 1150, 1164, 1200, 1238, 1323. The ALJ rejected Dr. Malvasi's opinion that Plaintiff would be off task 10 precent of the workday and absent about three days per month as speculative and not based on any objective evidence. *Id*. at 23, 1113.

Plaintiff has not challenged the ALJ's evaluation of Dr. Malvasi's opinion, and substantial evidence supports the mental RFC for simple work activity in a low stress

13

environment with limited social interaction. Dkt. No. 14 at 10-11. Based on the foregoing, remand is not warranted.

Next, Plaintiff takes issue with the ALJ's evaluation of LMFT Lewis' opinion. Dkt. No. 12 at 9. LMFT Lewis indicated Plaintiff's treatment was "sporadic" since August 2019 and noted diagnoses of generalized anxiety disorder and adjustment disorder. *Id*. at 1326. Similar to Dr. Williams and Dr. Malvasi, LMFT Lewis opined Plaintiff had a very good ability to carry out short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; and adhere to basic standards of neatness. *Id*. at 1327. She had a limited, but satisfactory ability to understand and remember very short and simple instructions and to be aware of normal hazards and take appropriate precautions. *Id*.

However, LMFT Lewis also opined Plaintiff would be off task 20 percent of the workday and would be absent more than four days per month. *Id*. at 1328. Plaintiff also had a limited to no useful ability to function in maintaining attention; maintaining a schedule; completing a workday; working with others; dealing with work stress; responding appropriately to changes in a routine setting; accepting instructions and responding appropriately to criticism from supervisors; and maintaining appropriate behavior. *Id*. at 1328.

Plaintiff argues the ALJ erroneously rejected a treating provider's mental RFC statement in part based on "sporadic" treatment during the relevant time period in favor of an "irrelevant" mental RFC statement from a non-examining consultant rendered after Plaintiff's DLI. Dkt. No. 12 at 9. The Court disagrees.

First, for reasons explained above, the Court does not find Dr. Williams' opinion irrelevant. Second, under the current regulations, a treating provider's opinion is not entitled to special deference. 20 C.F.R. § 404.1520c(a). Third, the "relationship with the claimant" is a

proper factor to consider when evaluating an opinion. *See id*. § 404.1520c(c)(3). Fourth, and most importantly, the ALJ found LMFT Lewis' extreme limitations not supported by his treatment notes describing Plaintiff as cooperative and calm with normal behavior and intact attention, full orientation, normal speech, bright intelligence and fair judgment. *Id*. at 22-23, 1326, 1332, 1334, 1338, 1343.

The ALJ also noted LMFT Lewis' limitations appeared based on Plaintiff's self-reports as opposed to objective findings. *Id*. at 23. For example, the form indicates, "She reports being unable to attend functions for her son due to panic which is something I used to enjoy doing." T. 1328. *See Ratliff v. Barnhart*, 92 F. App'x 838 (2d Cir. 2004) (An ALJ may discount an opinion from a claimant's own provider when the opinion is based solely on claimant's representations rather than first-hand observations.). Thus, the Court finds remand is not warranted on this ground.

Turning to the physical RFC, Plaintiff argues "[t]he ALJ's misunderstanding of the need to ask for retrospective opinion evidence in post-hearing interrogatories also tainted her assessment of Dr. Golub's opinion." Dkt. No. 12 at 9-10; Dkt. No. 15 at 2-4.[5] Again, the Court is not persuaded.

Plaintiff argues the ALJ erroneously rejected Dr. Golub's opinion, which includes a limitation for occasional handling and fingering, because Dr. Golub "advised the limitations he identified did not begin until January 2021, which is after the date last insured[.]" Dkt. No. 12 at 10; T. 23. While accurate, the next sentence reads, "Furthermore, the manipulative restrictions

---

[5] Plaintiff suggests the ALJ should have recontacted Dr. Golub to inquire about a retrospective opinion. *See* Dkt. No. 15 at 4. But Dr. Golub's opinion already indicates that the opined limitations were first present in January 2021, so it is unclear what further clarification on that point would add in this case.

Dr. Golub identified are not supported by the diagnostic studies of the claimant's upper extremities, and the limited treatment pursued by the claimant for her wrists/hands, which primarily entailed wearing splints[.]" T. 23. To that end, an EMG/nerve conduction study from December 2019 showed mild bilateral carpal tunnel syndrome. *Id*. at 23-24, 366, 371. Orthopedic records from December 2019 indicated Plaintiff had positive Tinel and Phalen tests, particularly in the left upper extremity, but she had no swelling or ecchymosis, normal range of motion of the elbows, wrist, and fingers bilaterally, and normal hand strength. T. 24-25, 366, 367. Plaintiff reported she attended hand therapy twice but stopped going because she was "not satisfied with the care." *Id*. at T. 23, 364.

The ALJ also noted hospital records from November 2020 indicated Plaintiff was able to move all her extremities without any noted difficulties, gastroenterology records indicated she was riding a lawnmower in the summer of 2020, and Plaintiff testified she was cleaning a bank two hours a night after her alleged onset date and also maintained daily activities. *Id*. 24, 26, 396, 1199. Thus, contrary to Plaintiff's assertion, the ALJ did not reject Dr. Golub's manipulative limitations solely because he opined the limitations were first present one day after the DLI and remand is not warranted on this basis.

Lastly, Plaintiff argues had Dr. Golub's occasional manipulative limitations not been rejected on faulty legal reasoning, at least two of the three jobs identified by the VE would be eliminated. Dkt. No. 12 at 10. Specifically, cleaner (DOT #323.687-014, light, 193,000 jobs nationally) requires frequent handling, and mail clerk-non-postal worker (DOT #209.687-026, light, 12,200 nationally) requires frequent handling and frequent fingering. *See id*. at 10 n.3.

However, for the reasons stated herein, the Court finds the ALJ did not err in her RFC assessment and the ALJ's hypothetical mirrored the RFC, which is supported by substantial

evidence. T. 77; Dkt. No. 14 at 15; *see also McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . .") (citation omitted). Nevertheless, the Court finds any error harmless because the third job identified by the VE, investigator dealer accounts (DOT # 241.367.038, light, 9,200 nationally), requires only occasional reaching, handling, fingering, 1991 WL 672258, and "jobs in numbers over 9,000 have been held to be significant." *Kelly D. v. Saul*, No. 5:18-CV-1190 (DJS), 2019 WL 6683542, at *6 (N.D.N.Y. Dec. 6, 2019) (citing *Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177-78 (W.D.N.Y. 2018) (finding 9,046 jobs in the national economy constituted a significant number).

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**; and it is further

**RECOMMENDED** Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED** and the Commissioner's decision be affirmed. Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 19, 2024
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge